**WO**                                                                                                   JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald J. Mazza,<br><br>    Plaintiff,<br><br>v.<br><br>United States of America,<br><br>    Defendant. | No.   CV-24-00384-TUC-SHR<br><br>**ORDER** |

**I.     Procedural History**

On August 5, 2024, Plaintiff Ronald J. Mazza, who is confined in the United States Penitentiary-Tucson, filed a pro se Complaint (Doc. 1) pursuant to the Federal Tort Claims Act (FTCA), asserting a negligence claim against the United States stemming from Plaintiff's assault by another prisoner. In a November 22, 2024 Order, the Court noted liability under the FTCA cannot be imposed if the tort claims stem from a federal employee's exercise of a "discretionary function." 28 U.S.C. § 2680(a). Because the Court cannot exercise jurisdiction over the Complaint if the discretionary-function exception applies, the Court determined it must resolve the jurisdictional question at the outset and required the parties to file briefs addressing whether the discretionary-function exception applies to Plaintiff's FTCA claim.

On January 22, 2025, the United States filed a Motion Regarding the Applicability of the Discretionary Function Exception to Plaintiff's Claim (Doc. 13). On February 24, 2025, Plaintiff filed a Response to the Motion, and on March 6, 2025, the United States

filed a Reply.  (Docs. 14, 15.)

## II.     Complaint

As noted, in his Complaint, Plaintiff asserts a negligence claim for personal injury against the United States under the FTCA.  Plaintiff alleges the following:

On August 23, 2022, Plaintiff was waiting in the medical unit to be seen for various injuries.  Another prisoner, Blevins, "blindsided" Plaintiff "in the front of the head at his right eye followed by his left eye."  Plaintiff stood up, and Blevins pushed Plaintiff over the bench where Plaintiff had been sitting.  Blevins repeatedly punched Plaintiff in the face, breaking Plaintiff's right orbital socket and nose.  The assault continued for five minutes before Ms. Weatherby opened the door to the medical waiting room and saw the fight.  Ms. Weatherby called on the radio saying there was a fight in the medical unit.  When Blevins heard the call over the radio, he repeatedly punched Plaintiff.  A nurse, Mr. Quesada, came to the door, saw the fight, entered the waiting area, and told Blevins to stop.  Blevins continued to punch Plaintiff.  Mr. Quesada pushed Blevins off Plaintiff.  Blevins laid against the wall and put his hands behind his back.  The responding officers later said, in front of Plaintiff, they had not been sure "where the fight was actually at."

The medical unit did not have a video camera in the waiting area, and the slide over the window to the records area was not open, so staff could not monitor prisoners in the waiting area.  Plaintiff alleges the United States was negligent for not having a CCTV camera "that could have resulted in a speedier response time," and he asserts the window slider should be open "per policy" so staff can respond quickly.

## III.    FTCA and Discretionary-Function Exception

The FTCA waives sovereign immunity for specified tort actions arising out of the conduct of federal employees.  28 U.S.C. § 2674; *Fang v. United States*, 140 F.3d 1238, 1241 (9th Cir. 1998).  That waiver, however, is limited. *Fang*, 140 F.3d at 1241.  Liability cannot be imposed if the tort claims stem from a federal employee's exercise of a "discretionary function."  28 U.S.C. § 2680(a).  Section 2680(a) provides the FTCA waiver of immunity does not extend to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The Court lacks jurisdiction over any claim to which the discretionary-function exception applies. *Alfrey v. United States*, 276 F.3d 557, 561 (9th Cir. 2002).

The Court applies a "two-step test to determine whether the discretionary function exception" applies. *Schurg v. United States*, 63 F.4th 826 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 379 (2023) (quoting *Esquivel v. United States*, 21 F.4th 565, 573 (9th Cir. 2021)). "Courts must determine whether (1) the challenged actions involve an element of judgment or choice and, if so, whether (2) the judgment is of the kind that the discretionary function exception was designed to shield." *Id.* (quoting *Schurg*, 21 F.4th at 573–74) (internal quotation marks omitted).

At the first step, the Court must decide whether the challenged conduct is discretionary, "that is, whether it 'involv[es] an element of judgment or choice. This element is not met when a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow. If the act is not discretionary, the government is not immune." *Id.* (quotations, citations, and alterations omitted).

Second, if the challenged conduct is discretionary, the Court "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy." *Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011) (quoting *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008)) (internal quotation marks omitted). "When a statute, regulation or agency guideline allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Alfrey*, 276 F.3d at 562 (quoting *Weissich v. United States*, 4 F.3d 810, 814 (9th Cir. 1993)). "Only those exercises of judgment which involve considerations of social, economic, and political policy are excepted from the FTCA by the

discretionary function doctrine." *Id.* (quoting *Sigman v. United States*, 217 F.3d 785, 793 (9th Cir. 2000)). "The primary focus of the second part of the test is on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 561–62 (quoting *Fang*, 140 F.3d at 1241) (internal quotation marks omitted). The Court may not consider whether the government abused its discretion or made the wrong decision. § 2680(a); *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011); *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012).

**IV.    Supplemental Briefing**

    **A.    United States' Brief**

The United States contends no federal statutes, policies, or regulations set out the precise steps that must be taken to ensure the safety of a prisoner and instead, BOP Program Statements, statutes, and regulations provide for BOP employees to use discretion and judgment. (Doc. 13 at 4.) The United States presents the Declaration of Associate Warden Frances Blackman-Conston. (Decl. of Frances Blackman-Conston, Doc. 13-1.) Blackman-Conston declares that under BOP policy, institutions must be able to respond within four minutes "to life- or limb-threatening medical emergencies" after those emergencies are identified by staff. (*Id.* ¶ 13.) Blackman-Conston avers federal regulations dictate that following an immediate use-of-force incident, medical attention and documentation are required of BOP employees. (*Id.* ¶ 19.) Blackman-Conston declares there are no statutes, regulations, or policies requiring the BOP to continuously monitor prisoners before a medical emergency or spontaneous fight between prisoners. (*Id.* ¶¶ 15, 19.)

Blackman-Conston further avers there are no federal statutes, policies, or regulations setting out the precise quantity or location of video surveillance cameras required at BOP institutions, including USP-Tucson. (*Id.* ¶ 27.) Blackman-Conston declares guidance on prisoner video surveillance cameras is subject to the Prison Camera Reform Act of 2021 (PCRA), P.L. 117-321, Dec. 27, 2022, 136 Stat. 4430, which required the BOP to submit a "plan for ensuring that all Bureau of Prisons correctional facilities

have the security camera . . . coverage and capabilities necessary" to ensure the health and safety of staff and federal inmates and "ensure the documentation and accessibility of video evidence that may pertain to misconduct by staff or inmates, negligent or abusive treatment of inmates, or criminal activity within correctional facilities." *Id.* at Sec. 3(a)(1)–(2). The BOP was given until March 2026 to implement those plans, subject to available appropriations. *Id.* at Sec. 3(c)–(d). On August 23, 2022, the date Plaintiff was attacked, the PCRA had not yet been enacted into law.

Blackman-Conston avers BOP policies mandate institutions take necessary steps to afford inmates confidentiality and privacy during medical visits and to maintain the confidentiality of inmate health records and health-related data. (*Id.* ¶¶ 32, 34.) Blackman-Conston declares there are no federal statutes, policies, or regulations mandating whether windows in Health Services waiting areas must or must not have window coverings. (*Id.* ¶ 31.)

With respect to the second step of the discretionary-function test, the United States argues "[d]ecisions about how to monitor inmates and provide for their safety are inherently policy-based." (Doc. 13 at 7.) Citing *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986), the United States asserts "[d]ecisions that affect the safety of prison staff, administrative personnel, visitors, and inmates require 'balancing competing institutional concerns.'" (*Id.*) The United States contends these types of decisions, such as whether to leave the Health Services window slide closed or open, require USP-Tucson officials to "balance the need to monitor inmates with the need to keep inmate medical information confidential." (*Id.* at 8.)

**B.    Plaintiff's Response**

In his Response, Plaintiff relies on BOP Program Statement 1600.13, National Fire Protection Policy, which provides "[i]nmates in Use Condition III, IV, and V facilities must be provided with the means to notify staff of a fire or similar emergency. This can be accomplished by duress alarms, audible supervision, visual supervision, or other reliable means." (Doc. 14 at 2.) Program Statement 1600.13 also states "[i]nmates may not be left

unattended in locked buildings. Where security necessitates locking of required egress doors, staff must be available in the locked building with the keys needed for evacuation. Inmates may be locked in a small work area if . . . [s]taff are available in the immediate area" and "[i]nmates have access to a signaling device to notify staff." (*Id.*) Plaintiff contends these "items" are not available in the medical waiting area. Plaintiff cites a decision from another Court in this District, *Pinson v. United States*, CV-19-00422-TUC-RM, 2024 WL 3091214 (D. Ariz. June 21, 2024), in which the Court stated Program Statement 1600.13 requires prisoners to be provided with a means of reporting emergencies, and although the policy provides some flexibility in choosing those means, it mandates the means chosen be reliable. (*Id.* at 3.) Plaintiff argues the Program Statement requires staff to be able to "see into medical, either via direct line of sight or via CCTV, and the Defendant clearly states that they did indeed and do continuously have the partition closed without a way for inmates to notify staff of an emergency should one arise." (*Id.*)

Plaintiff did not respond to the United States' arguments regarding the second step of the discretionary-function exception test.

### C. United States' Reply

In its Reply, the United States asserts Plaintiff's reliance on Program Statement 1600.13 is misplaced because the "Duress Alarm Systems" section of the Program Statement "does not, by its own terms, mandate cameras in the medical waiting area or that the window coverings be open," and the medical waiting area is not a "locked building," but a secured area in the medical facility. (Doc. 15 at 3.) The United States also contends the provision regarding duress alarms in "Locked Inmate Housing Units" explicitly applies only to housing units, the medical waiting area is not a housing unit, and a spontaneous inmate fight is not a fire or fire-related emergency. (*Id.*) The United States argues even if that provision applied to the medical waiting area, the guidelines provide discretion to determine the appropriate type of notification, such as "duress alarms, audible supervision, visual supervision, or other reliable means," and do not mandate camera surveillance or open window coverings in the medical waiting area. (*Id.* at 3–4.)

## V. Discussion

As noted, the first step in the discretionary-function analysis is whether the challenged conduct "involv[es] an element of judgment or choice." *Alfrey*, 276 F.3d at 561. Conduct is not discretionary if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Id.* "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

Here, the United States has presented evidence that no federal statutes, policies, or regulations set out the precise steps that must be taken to ensure prisoner safety and privacy during medical visits. Rather, relevant BOP program statements, statutes, and regulations permit BOP employees to use discretion and judgment. Under 18 U.S.C. § 4042, the BOP has a non-delegable duty to "provide for the safekeeping" of prisoners. However, as the Seventh Circuit has concluded, § 4042 "sets forth no particular conduct the [Bureau] personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997).

The Court agrees with the United States that Program Statement 1600.13 does not apply to the facts of this case. The provision regarding "Duress Alarm Systems" applies to locked buildings, and the waiting area is a secured area in the medical facility. That provision also does not mandate cameras in the medical waiting area or open window coverings; rather, it specifies only that staff must be available in locked buildings with the keys needed for evacuation. The "Locked Inmate Housing Units" provision applies to certain housing units, not the medical facility, and it does not prescribe a specific means of notification; rather, it states appropriate notification may be "duress alarms, audible supervision, visual supervision, or other reliable means." By its terms, the Program Statement gives USP-Tucson officials discretion to choose the appropriate means for prisoners to notify staff of a fire or similar emergency.

The Court also agrees with the United States that *Pinson* is inapposite. The plaintiff in *Pinson* was attacked while in her cell in the Special Housing Unit (SHU) and asserted her cell lacked a functioning duress alarm. *Pinson*, 2024 WL 3091214, at *1. A USP-Tucson post order stated each cell in the SHU has a duress alarm and directed staff to immediately respond when a duress alarm was activated. *Id.* at *3. When read in conjunction with Program Statement 1600.13's requirements for SHU cells, the Court concluded the post order "presupposes a duty to ensure that each cell's duress alarm is functioning." Because the evidence at trial showed the duress alarm was the only "reliable" means of notifying staff of an emergency in a SHU cell, the Court concluded "[Bureau] staff have a mandatory duty to ensure that each SHU cell contains a functioning duress alarm," thus precluding application of the discretionary-function exception.

The Court finds the first step of the discretionary-function test is satisfied.

As to the second step, the Ninth Circuit in *Alfrey* explained "[i]t is clear that balancing the need to provide inmate security with the rights of inmates to circulate and socialize within the prison involves considerations based upon public policy." 276 F.3d at 564; *see also Gladney v. United States*, 858 F. App'x 221, 224 (9th Cir. 2021) (prison's "choices about how to monitor prisoners" to prevent abuse or assault is "the type of policy judgment protected by the discretionary-function exception"). The Ninth Circuit has affirmed the dismissal of FTCA claims under the discretionary-function exception where prisoners asserted negligence claims based on prison officials' failure to protect them from assault by other prisoners. *See Alfrey*, 276 F.3d at 565; *Merz v. United States*, 532 F. App'x 677 (9th Cir. 2013); *Hernandez v. United States*, 83 F. App'x 206 (9th Cir. 2003). In addition, federal appellate courts have consistently concluded claims related to prisoner safety and surveillance are barred by the discretionary-function exception. *Donaldson v. United States,* 281 F. App'x 75, 77 (3d Cir. 2008); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998); *Calderon*, 123 F.3d at 949–50. The second step of the discretionary-function test is satisfied.

The Court concludes the discretionary-function exception bars Plaintiff's FTCA claims, and the Court lacks jurisdiction over the Complaint. The Court will therefore dismiss the Complaint and this case.

**IT IS ORDERED:**

(1) The United States' Motion Regarding the Applicability of the Discretionary Function Exception to Plaintiff's Claim (Doc. 13) is **granted**.

(2) The Complaint (Doc. 1) and this case are **dismissed** for lack of subject-matter jurisdiction.

(3) The Clerk of Court must enter judgment and close this case.

Dated this 23rd day of June, 2025.

Honorable Scott H. Rash
United States District Judge